IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| Plaintiff, | ) | Case No. 10 CR 342 |
| v. | ) ) | Judge Virginia M. Kendall |
| MIROSLAW LAGUNA | ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

  The Government indicted Miroslaw Laguna, a Polish national, of one count of intentionally interfering with a final deportation order between April 21, 2010 and April 29, 2010 in violation of 8 U.S.C. § 1253. Specifically, at trial the Government asserted that during that eight day stretch, Laguna refused to pick up his Polish passport, which the Polish authorities require before Immigrations and Customs Enforcement ("ICE") agents could deport him back to Poland. After a brief trial on April 12, 2011, a jury convicted him. Laguna filed a motion for a new trial under Rule 33, asserting that the Court improperly restricted the defenses' questioning regarding interactions between Laguna and ICE agents before April 2010 and that the Court erred by not permitting the defense to argue that those interactions impacted his state of mind in April 2010. Laguna also brought a motion for acquittal notwithstanding the verdict, asserting that the Government did not prove Laguna ever intentionally took an action to hamper his departure. For the below reasons, Laguna's motions are denied.

I.      **STANDARDS**

   A.      **Motion for Judgment of Acquittal**

A motion for judgment of acquittal under Rule 29 challenges the sufficiency of the evidence against a defendant. *See* Fed. R. Crim. P. 29 (requiring the Court to "enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction"). In challenging the sufficiency of the evidence, Laguna "bears a heavy, indeed, nearly insurmountable, burden." *United States v. Warren*, 593 F.3d 540, 546 (7th Cir. 2010). Such a motion should be denied if, after viewing the evidence in the light most favorable to the Government, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Hicks*, 368 F.3d 801, 804 (7th Cir. 2004); *see also United States v. Curtis*, 324 F.3d 501, 505 (7th Cir. 2003) (citing *United States v. Menting*, 166 F.3d 923, 928 (7th Cir. 1999) and finding a conviction entered after trial by jury should not be overturned unless "the record is devoid of evidence from which a reasonable jury could find guilt beyond a reasonable doubt.")

   B.      **Motion for New Trial**

A motion for a new trial under Rule 33(a) should be granted only if required "by the interest of justice." Fed. R. Crim. P. 33(a). Such motions should be granted sparingly and are only appropriate if "substantial rights of the defendant have been jeopardized by errors or omissions during trial." *United States v. Kuzniar*, 881 F.2d 466, 470 (7th Cir. 1989). A defendant is entitled to a new trial only if there is a reasonable possibility that a trial error had a prejudicial effect upon the jury's verdict. *See United States v. Berry*, 92 F.3d 597, 600 (7th Cir. 1996).

## II. DISCUSSION

### A. Sufficiency of Evidence

To prove the Laguna intentionally interfered with a final removal order in violation of 8 U.S.C. § 1253, the Government was required to show: (1) the defendant was not a citizen or national of the United States; (2) an immigration court entered a final order of removal against defendant pursuant to 8 U.S.C. § 1227(a)(2)(A)(ii) and (iii), which was outstanding; and (3) Laguna intentionally took action designed to prevent and hamper his departure pursuant to the outstanding deportation order. *See* 8 U.S.C. § 1253; *United States v. Peynado*, 385 Fed. Appx. 97, 101 (3d Cir. 2010); *United States v. Mandefro*, 122 Fed. Appx. 322, 323 (9th Cir. 2005). Laguna stipulated to the first two elements; only his intent was at issue during the trial. (Tr. 359.) Laguna also stipulated that Polish law required Laguna to have a Polish passport to enter Poland as part of his deportation, and that Laguna had to apply in person for the passport at a Polish consulate and pick it up there, also in person. (Tr. 338.)

At trial the Government called only two witnesses. The first was Geoffrey Peeple, the ICE agent in charge of Laguna's deportation. Agent Peeple testified that he explained to Laguna that he had to apply for a Polish passport, and that Laguna applied for that passport at the Polish consulate. (Tr. 262-63.) The receipt for the passport application indicated it would be ready for pickup at the consulate on April 21, 2010. (Tr. 264.) On April 21, 2010, Laguna appeared at the ICE offices as instructed so that an ICE agent could accompany him to the consulate to get the passport. (Tr. 286.) At that point, Agent Peeple testified, Laguna refused to go the consulate to get his passport. (*Id.*) After Laguna refused two requests from Agent Peeple to go to the consulate, the agent served an I-229 form on Laguna, which explains the consequences if an alien fails to get the travel documents

3

necessary for his deportation. (Tr. 286-87, 290.) Agent Peeple read the entire form to Laguna and Laguna signed it. (Tr. 291-92.) After going over the I-229, Agent Peeple again asked Laguna if he would go to the consulate to get his passport. (Tr. 292.) Again, Laguna refused, and Agent Peeple placed him in custody. (*Id.*) Next, Nicqualyn Graves, an employee of an ICE subcontractor, testified. She stated that she visited Laguna at home in February 2010, and explained to him that he needed to get a Polish passport. (Tr. 341-43.) Laguna told her that he was not planning to get a passport. (Tr. 343.) In a subsequent visit to Laguna's home, Graves and Laguna again discussed the passport requirement, and Laguna stated that he did not want to leave his family in the United States. (Tr. 344.) At another meeting with Graves, Laguna stated that he would not return to Poland, even if it meant going to jail in the United States. (Tr. 347.)

Laguna clearly knew that he needed to get the passport to effectuate his deportation, and that his decision not to get it would have consequences, even prison time. Still, he refused to pick up his passport. From this testimony, a rational jury could find beyond a reasonable doubt that Laguna intended to hamper his deportation back to Poland. Laguna is not entitled to an acquittal notwithstanding the verdict.

**B.    New Trial**

According to Laguna, the Court erred in two ways: (1) the Court precluded the defense from asking about the details of Laguna's interactions with ICE and its subcontractors between June 2004 and April 2010, and (2) the Court prevented the defense from arguing that Laguna's interactions with ICE and its vendors prior to April 21, 2010 negated Laguna's intent to interfere with his removal. The Court carefully considered the defenses arguments at trial as the evidence came out, and ruled that the defense could establish that Laguna did not intend to hamper his removal because he did not

4

know what steps he needed to take to assist in the deportation. (Tr. 259.) The Court precluded any argument, however, that Laguna did not intend to hamper his removal because of the Government's inaction; namely, that the Government did not deport him but rather put him on supervised release and allowed him work between September 2002 and April 2010. (*Id.*) At trial, the Court remarked:

> I see it skating the line of jury nullification, because, of course, it's the Government's burden to prove the intent. And lack of intent can be shown by his, what, lack of knowledge of what he had to do? So I can almost see that there is an argument that . . . would suggest that he was not aware of the requirements that he had, which would be a permissible argument.
>
> But to say, for example, that because over the course of his dealings [the Government] acted in a way that they acquiesced in allowing him to remain would not negate intent, because I don't think that's a defense.
>
> [I]f you have an arrest warrant out on the books and the police drive by you every day and wave to you on the street corner knowing there's an arrest warrant out, it doesn't negate the fact that the arrest warrant is based on valid probable cause, and at one day then they execute it and you're arrested. That's the concern that I have.

(Tr. 259.) The Court continued:

> There can be some minimal inquiry into who he's having dealings with during that period of time. But I will sustain objections if it just goes to a state of mind that suggests, in my opinion, either a jury nullification or just that, I'm complying so I'm a good person and it's not out there for me to worry about.

(Tr. 263.) Later, the issue came up again when Government objected to the entry into evidence of Laguna's order of supervision. Laguna's counsel stated that "the argument is that he's released on this [supervision] order, after having refused to sign any documents that ICE tendered to him, that he is by law required to sign those documents in order to effect his removal." (Tr. 303.) The Court noted that "what you're going to argue to the jury in the end . . . is that he didn't believe he had to

5

do this because they allowed him to work, et cetera, is where you get to the issue of jury nullification." (Tr. 304.) The Court ultimately allowed the defense to enter the order into evidence, but warned that any argument suggesting jury nullification. (Tr. 306.)

When the issue came up again during later testimony, the Court stated:

> So this issue is going to keep rearing its head throughout trial, because you based your whole defense on this concept that because ICE was acquiescing or liberalizing or making his supervised release easier that he somehow was placated into believing that he wasn't committing a crime.
>
> And I do – I think that's an improper defense – I'll tell you why . . . If your defense was during supervised release, I was told to go get a job an I didn't get a job and they never did anything, and then I was told to report to my INS officer once a month and I didn't and they never did anything. And then I was told to go get the passport, and I didn't and then all of a sudden I'm deported, that I think shows lack of criminal intent because there was no consequences for his actions. But the fact that ICE has executed an order that's valid and they can execute it – or shall we say – they have entered an order that is valid and they execute it any given time, there's no defense to saying that it was executed too late. There's no laches defense . . . . There's not defense to saying that because they were nice to me for five years or seven years or whatever it was, I believed that it wasn't valid. That's not a defense. It doesn't invalidate the order. And the executive branch can enter the order and enforce the order, when it's out there.

(Tr. 317-19.) In short, the Court ruled it was improper to argue that ICE allowed Laguna to not comply with the removal order because that is not a valid defense to the charge that he hampered his removal. (Tr. 323-24) (noting "it is essentially saying that because [ICE] did not effectuate this deportation earlier, [Laguna] believed it was not something [he] had to do, which means, [Laguna] believe[d] that [he] could avoid the law, and that isn't a defense.") Consequently, the Court found Laguna's previous interactions with ICE and its subcontractors were irrelevant because the

6

Government charged an eight-day period and, as detailed above, Laguna was told during that period that he needed to get a passport and he refused to do so. (Tr. 327.)

Laguna does not challenge the validity of the deportation order. Laguna's argument is not that he did not know that he needed a passport to be deported, or that he did not know that he could be criminally prosecuted for not picking up his passport, evidence of which could possibly demonstrate lack of intent. Rather, his argument, excluded at trial, is that he did not have the requisite intent to hamper the deportation because he did not expect to get deported after ICE allowed him to stay in the United States and work for many years even after his deportation order. That argument suggests jury nullification because it encourages the jury to find Laguna innocent simply because of a bureaucratic delay or an executive decision to wait to enforce an order (which are not proper affirmative defenses), rather than because the Government failed to prove the elements of 8 U.S.C. § 1253(a)(1)(B) or (C). Laguna's argument is really a twist on an "outrageous government conduct" defense, a defense that is "stillborn" in this circuit. *See United States v. Boyd*, 55 F.3d 239, 241 (7th Cir. 1995); *see also United States v. Sherman*, 268 F.3d 539, 549 (7th Cir. 2001) (commenting that law enforcement should not have provided seized child pornography to the defendant over the course of an investigation because it re-victimized the child but explicitly noting that it was not resurrecting the "outrageous government conduct" defense). Because allowing Laguna to go into great detail about his contact with ICE and its subcontractors before the eight day period charged in the indictment would only raise an improper defense and was otherwise irrelevant, the Court properly limited testimony on that point. *See e.g., United States v. Perez*, 86 F.3d 735, 736 (7th Cir. 1996) (it is improper for a defendant to encourage jury nullification).

## III. CONCLUSION

For the foregoing reasons, Laguna's motions for a new trial and for acquittal are denied.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: October 4, 2011